**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LELITH GRANT-BERGEN,<br><br>                      Plaintiff,<br><br>v.<br><br><br><br>METROPOLITAN LIFE INSURANCE COMPANY, MARSH & MCLENNAN COMPANIES, INC., HOPETON RICHARDS,<br><br>                      Defendants. | Civ. No. 08-4829 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

CHARLES D. DAWKINS, JR., ESQ.
33 Wood Avenue South, Suite 600
Iselin, NJ 08830

    *Attorney for Plaintiff,*

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLC
by: Louis P. Digiaimo, Esq.
Randi F. Knepper, Esq.
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962

    *Attorneys for Defendant Metropolitan Life Insurance Company,*

ROBINSON, WETTRE & MILLER, LLC
by:  Leda Dunn Wettre, Esq.
One Newark Center, 19th Floor
Newark, NJ 07102

*Attorney for Defendant Marsh & McLennan Companies, Inc.*

**DEBEVOISE, Senior District Judge**

This matter comes before the Court on Defendant, Metropolitan Life Insurance Company's ("MetLife") motion to dismiss Plaintiff, Lelith Grant-Bergen's complaint; a motion by Defendant, Marsh & McLennan Companies, Inc. ("Marsh"), to dismiss Plaintiff's complaint, or in the alternative for summary judgment; and Plaintiff's motion to amend her complaint. Defendant, Hopeton Richards, appears pro se in this matter and has taken no action in it. Plaintiff provided a copy of her proposed amended complaint with her motion papers.  Because all of the parties submitted materials outside of the pleadings; because the plaintiff was on notice that a motion for summary judgment had been filed in the alternative and had an opportunity to respond and submit additional materials; and because certain additional materials submitted by the parties present issues that are incontrovertible and dispositive of this case, the court will review both defendants' 12(b)(6) motions as Rule 56 motions for summary judgment.  The court grants summary judgment in favor of Marsh and MetLife.  The complaint against Hopeton Richards is dismissed as moot.

## I. Background

Plaintiff brought this action to recover an additional portion of compensation and benefits as a beneficiary of her daughter, Venesha Richards, a Marsh employee who died on September 11, 2001.  Plaintiff alleges generally that Marsh and MetLife, the insurers on Marsh's life insurance policies, did not provide her with truthful information about her daughter's beneficiary

designations, and that she should have been the sole beneficiary of Ms. Richards's benefits. Plaintiff asserts five claims in her proposed amended complaint: 1) fraud, 2) breach of contract, 3) request for clarification of her rights under the insurance plan, pursuant to Employee Retirement Income Security Act ("ERISA") § 502(a)(1)(B), 4) request to review documents, obtain a statement of benefits, and to recover statutory penalties, pursuant to ERISA §§ 502(a)(1)(A), (3), and (4), and 5) breach of fiduciary duty pursuant to ERISA §§ 502(a)(2) and 409.

Plaintiff originally brought this suit in the Superior Court of New Jersey on August 15, 2008, seeking relief in the form of 1) an order to compel MetLife and Marsh to produce all documents relating to the payment of benefits under her daughter's insurance plan, and 2) an order granting damages in the event that funds were wrongfully disbursed. MetLife and Marsh removed the matter based on federal question jurisdiction because Plaintiff's state law claims are preempted by ERISA. 29 U.S.C. § 1132(e); 28 U.S.C. § 1331.

Plaintiff was represented by different counsel when the case was removed. The court granted prior counsel's motion to withdraw his representation on June 5, 2009. On July 15, MetLife moved to dismiss the complaint. Plaintiff's current counsel entered his notice of appearance on August 5. Marsh moved to dismiss the complaint, or in the alternative, for summary judgment on August 13. Plaintiff filed an amended complaint on August 14. She then filed a motion to amend the complaint a second time. Marsh and MetLife both opposed that motion. This court heard oral arguments from the three parties on the three motions.

    A. <u>The Parties</u>: Plaintiff is the mother of Venesha Richards. (Proposed Amended Complaint, hereinafter "PAC" ¶ 6.) Ms. Richards was employed by Marsh, a company that had offices in the Twin Towers. (Id. ¶ 8.) Ms. Richards married Hopeton Richards in July 1998.

(PAC ¶ 10.)  The couple had a child together in October 2000.  (Id. ¶ 14.)  Ms. Richards was killed in the September 11, 2001 terrorist attack on the World Trade Center.  (Id. ¶ 7.)

MetLife issued Ms. Richards's basic life insurance and optional life insurance policies (collectively, "Life Insurance Policies").  (Id. Exhibit, hereinafter "Ex." 5.)  The other compensation and benefits owed to Ms. Richards's beneficiaries upon her death were provided by Marsh directly (salary continuation, accrued vacation, special death benefit, stock investment plan, stock purchase plan, and retirement plan), or were covered by policies issued by American Insurance Group (business travel accident insurance policy) and CNA (personal accident insurance policy).  (Id. Ex. 5.)

B.  The Designation of Beneficiary Form:  Marsh offered various benefits to its employees and the beneficiaries of deceased employees.  Venesha Richards elected to enroll in some Marsh benefits as early as 1995 (Id. ¶ 31, Ex. 3.)  Ms. Richards informed Plaintiff on a number of occasions that Plaintiff was the sole beneficiary of all of the benefits offered to Ms. Richards by Marsh.  (Id. ¶¶ 9, 14.)

A document titled Health and Welfare Plans Beneficiary Designation Form ("Designation Form") issued by Marsh's Human Resources Department shows that in November 1998, four months after Ms. Richards and Hopeton Richards were married, Ms. Richards designated as beneficiary of her Life Insurance Policies:  Hopeton P. Richards (70%) and Lelith Grant (30%). (Id. Ex. 1, 2.)  Marsh provided Plaintiff with two copies of this form at different moments; one copy was stamped "Received November 20, 1998" (Ex. 2), and the other copy had no stamp (Ex. 1).  Plaintiff believes for two reasons that these forms were falsified by Marsh:  1) both copies of the form were marked "initial designation" (whereas Plaintiff knew that Ms. Richards was already enrolled in benefits plans before 1998) and 2) one copy of the form bore a stamp that was

4

absent from the other copy.  Plaintiff, however, does not take issue with the authenticity of Ms. Richards's signature or any other signature on the form.  The form states:

> I understand that this designation revokes any and all previous designations I have made with respect to the Plan(s) noted above, and I authorize the Plan Administrator to pay any proceeds according to this designation… (Id. Ex. 1, 2.)

      C.  <u>The Payments Designation to Plaintiff and Hopeton Richards</u>:  According to a letter addressed to Plaintiff and Hopeton Richards, dated October 19, 2001, the beneficiaries of Ms. Richards were entitled to receive:  1) three months' base pay, in the amount of $10,000.00; 2) accrued vacation pay, in the amount of $1,076.92; 3) basic life insurance policy, in the amount of $40,000.00; optional life insurance policy, in the amount of $80,000.00; 4) business travel accident insurance, in the amount of $79,690.00; 5) personal accident insurance, in the amount of $200,000.00; special death benefit payment, in the amount of $3,333.33; 6) stock investment plan, in the amount of $19,131.61; 7) stock purchase plan, in the amount of $886.79; and 8) a lump sum payment on Ms. Richards's retirement plan, in the amount of $2,050.50.  (Id. Ex. 4.)  Plaintiff does not challenge the authenticity of this letter.

      Another document[1] describes of the manner in which the above cited benefits were to be paid:  1) three months' base pay, in the amount of $10,000.00 to be paid to the Estate of Ms. Richards; 2) accrued vacation pay, in the amount of $1,076.92 to be paid to the Estate of Ms. Richards; 3) basic life insurance policy, in the amount of $40,000.00 to be paid in two parts: $28,000 to Hopeton Richards and $12,000 to Plaintiff; optional life insurance policy, in the amount of $80,000.00 to be paid in two parts:  $56,000 to Hopeton Richards and $24,000 to Plaintiff; 4) business travel accident insurance, in the amount of $79,690.00 to be paid to

---

[1] The document bears no date on the first page, but references in the third paragraph on the second page the balance of Ms. Richards's Stock Investment Plan as of September 28, 2001.

Hopeton Richards; 5) personal accident insurance, in the amount of $200,000.00 to be paid to Hopeton Richards; special death benefit payment, in the amount of $3,333.33 to be paid to Hopeton Richards; 6) stock investment plan, in the amount of $19,131.61 to be paid to Hopeton Richards; 7) stock purchase plan, in the amount of $886.79 to be paid in two parts: $516.93 to Hopeton Richards and $221.54 to Plaintiff; and 8) a lump sum payment on Ms. Richards's retirement plan, in the amount of $2,050.50 to be paid to Hopeton Richards. (Id. Ex. 5.) The form counsels that payments will be expedited when a marriage certificate is presented for the items numbered here as 4, 7, and 8. Plaintiff does not take issue with the authenticity of this document.

     D. <u>Communications Between Plaintiff and MetLife</u>: On November 5, 2001, Marsh authorized MetLife to pay benefits in accordance with the beneficiary designations Marsh had on file. (Voitovich Decl. ¶ 2.) On November 8, MetLife issued Plaintiff a check for $36,000, which represents 30% of the proceeds from Ms. Richards's Life Insurance Policies. (Id. ¶ 20; MetLife Brief in Support of Motion to Dismiss at 2.)

     E. <u>Communications Between Plaintiff and Marsh</u>: In October 2001, Marsh invited Plaintiff to the Millenium Hotel to discuss her daughter's benefits. (Id. ¶ 17.) Plaintiff requested that Hopeton Richards accompany her for moral support. (Id. ¶ 18.) Plaintiff spoke with one Marsh representative, and Hopeton Richards spoke with another. (Id. ¶ 19.)

     On November 6, 2001, Marsh authorized the payment of benefits under the remainder of Ms. Richards's welfare benefit plans in accordance with the company's records of Ms. Richards's beneficiary designation. (Voitovich Decl. ¶ 3.) Marsh's records reflect that benefits were paid to Ms. Richards's beneficiaries on November 12 and November 27.

On February 27, 2002, an employee of Marsh's Corporate Benefits Department sent a letter to the attorney representing Plaintiff. (Plaintiff's Reply Brief on Motion to Amend, "Pl. Reply Brief" Ex. A.) It states:

> We understand from the Relationship Manager to the family of Venesha O. Richards that Lelith Bergen believes she was the sole beneficiary on certain of Ms. Richards' [sic] benefits.
>
> Please note that our records show that Mrs. Bergen was designated to receive a portion of the benefit proceeds as indicated in the October 19, 2001 letter sent to Mrs. Bergen and Hopeton Richards, Ms. Richards' [sic] husband at the time of her death.
>
> That said, if you are able to provide us with a copy of a beneficiary designation showing Mrs. Bergen as the sole beneficiary, we would be happy to review it to determine its validity. Id.

On March 4, 2002, an attorney in Marsh's Corporate Benefits Department sent the same attorney a letter, stating:

> This is to further our discussion today. Attached is a copy of the Health and Welfare Plans Beneficiary Designation Form executed by Venesha Richards on November 18, 1998 showing that Lelith Grant-Bergen was a named beneficiary for 30% of the proceeds payable under the Marsh and McLennan Companies [sic.] Basic and Optional Life Insurance Programs.
>
> As promised, I spoke with Hopeton Richards this evening, and regretfully, Mr. Richards requested that we continue to maintain the confidentiality of those plans for which Ms. Grant-Bergen was not a named beneficiary.
>
> We regret that this may not be the response you were seeking, but it's important that we respect the beneficiaries of our lost employees. (Voitovich Decl., Ex. B.)

Plaintiff does not dispute that she received notice of the above communications through her attorney in 2002.

Plaintiff states that she did not realize she had a claim until 2007 when she found a document titled Beneline Fact Sheet. (Id. Ex. 3.) The document was addressed to Ms. Richards at Plaintiff's address. (Id.)

7

Marsh submitted a copy of the company's Benefits Handbook ("Handbook").  (Id. Ex. A.)  The Handbook states that the following plans, relevant to this matter, were covered by ERISA:  Basic and Optional Life Insurance, Stock Investment Plan, Retirement Plan, Travel Accident Insurance, and Personal Accident Insurance.  (Id. at K-2.)  The chapter of the Handbook concerning plan administration requires that any lawsuit be brought within three years after the date a benefit was denied or a cause of action arose.[2]  (Id. at K-8.)

In the PAC, Plaintiff asserts five claims against defendants, including:  1) fraud, 2) breach of contract, 3) request for clarification of her rights under the insurance plans, pursuant to Employee Retirement Income Security Act ("ERISA") § 502(a)(1)(B), 4)  request to review documents, obtain a statement of benefits, and to recover statutory penalties, pursuant to ERISA §§ 502(a)(1)(A), (3), and (4), and 5) breach of fiduciary duty pursuant to ERISA §§ 502(a)(2) and 409.

In the PAC, Plaintiff seeks compensatory damages; punitive damages; clarification of her rights under Marsh's various benefit plans and MetLife's life insurance policies; enforcement of her rights under Marsh's various benefit plans and MetLife's life insurance policies; ERISA statutory penalties; an order compelling Marsh and Met Life to make available for inspection the originals of all documents relating to amounts payable to Ms. Richards's beneficiaries; and interest, attorney's fees and costs.

## II. Discussion

MetLife raises multiple grounds for judgment as a matter of law.  MetLife argues that Plaintiff's claims are all time-barred by the statute of limitations contained in the Handbook.  In

---

[2] The plan states: *Actions must be brought within three years of the date your benefit was denied (or date your cause of action first arose, if earlier).*  (emphasis in original)

the alternative, the claims are also time barred under New Jersey law.  Additionally, MetLife contends that the complaint should be dismissed because MetLife paid the applicable benefits in accordance with the Designation Form executed by Decedent without knowledge of a competing claim.  Finally, MetLife argues that Counts One and Two for fraud and breach of contract, respectively, are preempted by ERISA; and that Count Five is not a claim that can be brought based on personal damages, but rather must be brought based on damages to an ERISA plan.

Marsh also advances various grounds for dismissal, or in the alternative, summary judgment.  Marsh argues that the statute of limitations applicable to all employee benefits plans has expired.  Marsh also argues that Plaintiff's claims are barred because Marsh authorized payment to beneficiaries designated by the Decedent without knowledge of a competing claim.  Marsh makes the same critique of Count Five as MetLife, on similar grounds.  Additionally, Marsh contends that Count Four does not request appropriate relief for the present situation; and that even if Count One is not preempted by ERISA, it is not pled with sufficient particularity to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

Plaintiff argues that the statutes of limitations should be tolled by the common law discovery rule, based on fraudulent concealment of facts.  She further contends that Counts One and Two are not preempted by ERISA.  Finally, Plaintiff argues that she should be allowed to amend her complaint in the interest of justice.

As a preliminary matter, it is necessary to address the nature of the motion currently before the court.  Where matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss should be treated as one for summary judgment under Fed. R. Civ. Pro. 56 and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.  Rule 12(b); In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 287

(3d Cir. 1999). As is the case here, when a motion to dismiss has been alternately framed as a motion for summary judgment and the nonmoving party has submitted evidence extraneous to its pleadings, the Court need not provide the parties with express notice of conversion. Id. at 288-89; Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996); Butterbaugh v. Chertoff, 479 F. Supp. 2d 485, 490 (W.D. Pa. 2007).

Conversion of MetLife and Marsh's Rule 12(b)(6) motions to Rule 56 motions is appropriate here. Plaintiff had adequate notice that the court could these motions and did not object to the submission of materials outside of the pleadings. See Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996) (finding that since two of five motions to dismiss were framed in the alternative as motions for summary judgment, plaintiff was on notice that the court would convert all of defendants' motions); Butterbaught v. Chertoff, 479 F. Supp 2d 485, 490 (W.D. Pa. 2007); c.f. In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (determining that notice of conversion was inadequate, and distinguishing Hilfirty on the basis that none of defendants' motions to dismiss were framed in the alternative as motions for summary judgment). Moreover, as further evidence that Plaintiff had an opportunity to respond to the summary judgment motion, the court notes that she attached two additional documents that are not referenced in her complaint to her Reply Brief in support of her Motion to Amend. Furthermore, conversion is appropriate here because as discussed further infra, the Handbook provided by Marsh and Metlife and two letters provided by both Plaintiff and Marsh, including the February 27, 2002 and March 4, 2002 letters, are dispositive of this case based on the statute of limitations arguments raised by Marsh and MetLife. (Voitovich Decl. Ex. A, B; Pl. Reply Brief Ex. A.) See 2-12 Moore's Federal Practice – Civil § 12.34 ("courts tend to use the

10

conversion option only in situations in which the materials extrinsic to the pleadings are incontrovertible and pose discrete and dispositive issues").

A second preliminary matter concerns Plaintiff's motion to amend her complaint. Generally, when a defendant moves to dismiss based on failure to state a claim, a plaintiff can amend the complaint once as a matter of course without leave of the court. Fed. R. Civ. P. 15(a). After amending once or after an answer has been filed, the plaintiff may amend only with leave of the court or the written consent of the opposing party, but "leave shall be freely given when justice so requires." Rule 15(a); Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000). Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency. Id. Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Id.

Plaintiff's PAC, which she filed in conjunction with her present motion to amend the complaint, would not survive a motion to dismiss or a motion for summary judgment because it is time-barred, as discussed further below. See Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988). Where a complaint as amended would not withstand judgment as a matter of law, the court need not grant a plaintiff leave to amend. See Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

#### A.     Standard of Review

Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Rule 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law."  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

In a motion for summary judgment, the moving party has the burden of showing that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine issue of fact exists and a trial is necessary.  Id. at 324.  In meeting its burden, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just create "some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party.  See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The Court's function, however, is not to weigh the evidence and determine the truth of the matter, but, rather, to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If there are no issues that require a trial, then judgment as a matter of law is appropriate.

## B. ERISA Preemption

The PAC's first and second counts allege fraud and breach of contract. MetLife and Marsh argue that these claims are preempted by ERISA. ERISA governs employee plans that qualify as welfare benefit plans, pension benefit plans, or both. 29 U.S.C. § 1002(3). An employee welfare benefit plan is a plan or fund established by an employer "for the purpose of providing its participants or their beneficiaries "benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits." 29 U.S.C. §1002(1). The benefits at issue here, including Life Insurance Policies, Stock Investment Plan, Retirement Plan, Travel Accident Insurance, and Personal Accident Insurance, fall within the definition of employee welfare plans covered by ERISA.

A cause of action relating to an employee benefit plan and brought by a plan participant or beneficiary is governed by the civil enforcement provision of ERISA, 29 U.S.C. § 1132. See Aetna Health Inc. v. Davila, 542 U.S. 200, 209 ("[A]ny state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make ERISA the exclusive remedy and is therefore pre-empted."). A state law cause of action "relates to" an employee benefit plan when it "has a connection with or reference to such a plan." Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 47 (1987). Common law causes of action, such as fraud or breach of contract, relate to employee benefit plans and thus are also preempted. Id. at 47-48. Plaintiff's claims, though couched as claims for fraud and breach of contract, are aimed at recovering benefits and enforcing rights under the terms of her daughter's plans and therefore are preempted by ERISA.

### C.      Statute of Limitations

ERISA does not contain a specific statute of limitations for claims for benefits due, so courts apply the statute of limitations for the forum state claim most analogous to the ERISA claim.  Miller v. Fortis Benefits Insurance Co., 475 F.3d 516, 520 (3d Cir. 2007).  However, if an ERISA plan specifies a period of limitations for the commencement of a legal action, that limitations period is controlling and will be enforced if the court considers it reasonable.  Id.; See Doe v. Blue Cross & Blue Shield United of Wisconsin, 112 F.3d 869, 874-75 (7th Cir. 1997) (explaining that "the dominant view in contract law is that contractual limitations periods shorter than the statute of limitations are permissible, provided they are reasonable").  Here, the plan provides a three year period from the date a beneficiary's claim is denied.  A three year period is reasonable, since it is equivalent to the period provided in § 1113(2) for breach of fiduciary duty suits.[3]  Under § 1113, this case would be governed by the three year statute of limitations period provided by subsection 2, running from the date Plaintiff became aware of Marsh's refusal to agree that she was eligible to receive more than 30% of certain benefits paid to Ms. Richards's designated beneficiaries.

---

[3] 29 U.S.C. § 1113 states:
No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--

**(1)** six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

**(2)** three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Further, precedent demonstrates that generally, a three-year limitation is a reasonable period.  See, e.g., Northlake Regional Medical Center v. Waffle House System Employee Benefit Plan, 160 F.3d 1301, 1304 (11th Cir. 1998) (upholding an ERISA plan's 90-day limitations period); Wilkins v. Hartford Life and Accident Insurance Co., 299 F.3d 945, 948 (8th Cir. 2002) (enforcing three year limitations period in ERISA plan); Doe, 112 F.3d at 873-75 (finding a thirty-nine month contractual statute of limitations period reasonable).

Plaintiff, however, contends that her claim only accrued in 2007, when she found a 1995 document relating to her daughter's benefits selections.  (PAC Ex. 3.)  Plaintiff argues that the federal common law discovery rule should apply.  Under the discovery rule, a "cause of action accrues when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth., 539 F.3d 199, 209 (3d Cir. 2008) (internal quotations omitted) (quoting Romero v. Allstate Corp., 404 F.3d 212, 222 (3d Cir. 2005)).

The accrual date for federal claims is governed by federal law, regardless of the source of the limitations period.  Romero v. Allstate Corp., 404 F.3d 212, 221 (3d Cir. 2005).  The general rule in an ERISA action is that a cause of action accrues after a claim for benefits has been made and has been formally denied.  Id.; Union Pacific R.R. v. Beckham, 138 F.3d 325, 331 (8th Cir. 1998), cert. denied, 525 U.S. 817, 142 L. Ed. 2d 43, 119 S. Ct. 56 (1998) (describing the ERISA accrual rule as comporting with the discovery rule, since a beneficiary cannot argue that he was unaware of an injury when his claim was denied).

Accordingly, under both the discovery rule and ERISA-specific accrual rule, Plaintiff should have known that it was Marsh's position that she was not the 100% beneficiary of Ms. Richards's benefits after each of the following:  the October 21, 2001 letter (addressed to

Hopeton Richards and Plaintiff, describing the break-down of benefits to be paid to each) (PAC Ex. 4); the February 27, 2002 letter (addressed to Plaintiff's then-attorney, stating Marsh's position that Plaintiff was not the 100% beneficiary of Ms. Richards's benefits) (Pl. Reply Brief Ex. A.); and the March 4, 2002 letter (addressed to the same attorney, stating the same position and attaching Ms. Richards's beneficiary designation form) (Voitovich Decl., Ex. B.).  Even if we construe the latest communication, the March 4, 2002 letter, as the date on which Plaintiff knew or should have known that her claim was being denied, the statutory period would have expired on March 4, 2005, and Plaintiff did not file this case until March 15, 2008.

Plaintiff argues that the final clause of ERISA § 1113 should apply to her case: "except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation."  The court finds that there is no genuine issue in the record supporting a finding of fraud or concealment on the part of Marsh or MetLife. To be a genuine issue, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  Plaintiff cites as evidence of fraud or concealment that Marsh refused to release any information that evidenced Ms. Richards's beneficiary selections for the various Marsh plans. (Plaintiff's Brief in Opposition to MetLife's and Marsh's Motion to Dismiss at 9.)  The documents submitted by Marsh and MetLife and by plaintiff herself clearly contradict that claim. Plaintiff's attorney communicated with Marsh on various occasions in 2002 and Plaintiff is in possession of a number of documents and letters provided to her by Marsh.  Furthermore, Plaintiff does not dispute the authenticity of her daughter's signature on the beneficiary designation form, so the court finds that no reasonable jury would agree with Plaintiff that the form was falsified.  Finally, there is evidence that Marsh authorized payments to Plaintiff in

16

proportion to the designations made by her daughter; it is undisputed that MetLife paid Plaintiff $36,000, or 30% of Ms. Richards's Life Insurance Policies.  Marsh authorized and made payments on the remainder of the benefit policies in accordance with its records.

Therefore, the court will not reach the parties' other arguments because all the claims are time-barred.

### III.  Conclusion

For the foregoing reasons, the court grants summary judgment on all claims in favor of Marsh and MetLife.[4]  The Court will enter an order implementing this opinion.


                                                    s/ Dickinson R. Debevoise
                                                  DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: October 5, 2009

---

[4] Defendant, Hopeton Richards, did not move to dismiss the actions as against him, but in light of the disposition of MetLife's and Marsh's motions the claims against him cannot survive, and they will be dismissed.